UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RESCUECOM CORPORATION,

                 Plaintiff,

v.                                      5:07-CV-0690
                                       (FJS/GHL)

JONATHAN CHUMLEY; and
OSI CONSULTING, LLC,

                 Defendants.
_____

APPEARANCES:                       OF COUNSEL:

RESCUECOM CORPORATION       EDMUND J. GEGAN, ESQ.
CORPORATE COUNSEL
   Counsel for Plaintiff
2560 Burnet Avenue
Syracuse, New York  13206

LAW OFFICES OF RONALD J. KIM      RONALD J. KIM, ESQ.
   Counsel for Defendants
P.O. Box 318
Saratoga Springs, New York  12866

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

       Currently pending before the Court are Plaintiff's motion for remand and Defendants'

cross-motion for various forms of relief, including dismissal.  Both motions have been referred to

me for a Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(a) of the Local Rules

of Practice for this Court.  For the reasons discussed below, I recommend that Plaintiff's motion

for remand be denied, and that Defendants' cross-motion be denied.

I.    **BACKGROUND**

On or about June 8, 2007, Plaintiff filed this action, sounding in contract, in Supreme

Court for Onondaga County.  (Dkt. No. 1, Part 2 [Plf.'s Compl.].)  On or about July 3, 2007,

Defendants removed this action to this Court.  (Dkt. No. 1, Part 1 [Defs.' Notice of Removal].)

In their Notice of Removal, Defendants asserted that the grounds for the removal included the

fact that the Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332,

since (1) the case involves claims between parties of diverse citizenship, and (2) the amount in

controversy, as pled by Plaintiff, exceeds $75,000.  (*Id*. at ¶ 1.)

On July 13, 2007, Plaintiff requested that the Court hold a pre-motion conference to assist

the parties in resolving their disagreement over whether the matter should be remanded to state

court because (as Plaintiff asserts) the amount in controversy–both as alleged by Plaintiff in its

Complaint and as established by extrinsic evidence outside the four corners of that

Complaint–does not exceed $75,000.  (Dkt. No. 6.)  On July 18, 2007, that conference was

conducted, and it was decided that the parties would brief the issue, by letter, of whether remand

was appropriate in this case.  (*See* Docket Minute Entry for 7/18/07.)

On August 1, 2007, Defendants filed a letter brief opposing Plaintiff's request for

remand.  (Dkt. No. 10, Part 1.)  In that letter brief, Defendants essentially employ a two-pronged

argument.  First, Defendants argue that, while attempting to meet their burden of proving that the

referenced $75,000-amount requirement has been satisfied with a "reasonable probability," they

are entitled to the same rebuttable presumption of proper subject-matter jurisdiction that a

plaintiff filing its claim in federal court would enjoy.  (*Id*. at 2.)  And, here, Defendants argue,

Plaintiff has failed to adduce evidence that rises to the level of "legal certainty" necessary to

2

rebut that presumption.  (*Id*.)  Second, Defendants argue that, even if Plaintiff is correct in stating

that the actual damages alleged are less than $75,000, the Court should conclude that Plaintiff is

seeking money damages in the amount of $80,528,55, since Plaintiff requests, as part of its

damages, attorney's fees in the amount of $16,105.71.  (*Id*. at 2-4.)

On August 8, 2007, Plaintiff filed a letter brief replying to Defendants' arguments.  (Dkt.

No. 13 [Plf.'s Reply Letter].)  In that letter brief, Plaintiff essentially argues that (1) Defendants

are not entitled to the aforementioned rebuttable presumption, and they have not met their burden

of proving that the referenced $75,000-amount requirement has been satisfied with a "reasonable

probability," and (2) attorney's fees may not be considered as part of a plaintiff's claim for

damages (for purposes of determining the jurisdictional amount) when, as here, those attorney's

fees are not mandated by statute, but awarded pursuant to a court's discretion.  (*Id*. at 2-5.)

Moreover, on August 28, 2007, Defendants filed a cross-motion requesting three forms of

relief in alternative fashion.  Specifically, Defendants' cross-motion requests (1) an Order

dismissing Plaintiff's Complaint based on lack of personal jurisdiction, or, in the alternative, (2)

an Order transferring this action to the United States District Court for the Western District of

Louisiana, under 28 U.S.C. § 1404(a), or, in the alternative (3) an Order compelling Plaintiff to

participate in arbitration with Defendants, as demanded by Defendants pursuant to the arbitration

clause in the parties' agreement.  (Dkt. Nos. 18-19.)  On October 9, 2007, Plaintiff filed its

opposition to Defendants' cross-motion.  (Dkt. Nos. 25-27.)  On October 16, 2007, Defendants

filed their reply to Plaintiff's opposition to Defendants' cross-motion.  (Dkt. No. 29.)

II.     ANALYSIS

A.      Plaintiff's Motion to Remand

"Section 1441 of Title 28 of the United States Code allows for removal of an action filed in state court only if the action could have originally been filed in federal court." *New York v. Stoddard*, 06-CV-1320, 2006 WL 3423863, at *1 (N.D.N.Y. Nov. 28, 2006) (Scullin, J.) [citing *Fax Telecomm. Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998)]. "A plaintiff may file a complaint in federal court only if that court has subject matter jurisdiction over the claims." *Stoddard*, 2006 WL 3423863, at *1. "The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332." *Id.* "Under these statutes, federal jurisdiction is available only when a federal question is presented, i.e., when the action 'aris[es] under the Constitution, laws, or treaties of the United States,' 28 U.S.C. § 1331, or when the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs,' exceeds $75,000, 28 U.S.C. § 1332." *Id.*

As described above in Part I of this Report-Recommendation, in this case, Defendants, in removing this action to federal court, stated that the grounds for the removal included the fact that this Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.§ 1332(a), the diversity jurisdiction statute, since (1) the case involves claims between parties of diverse citizenship, and (2) the amount in controversy, as pled by Plaintiff, exceeds $75,000.[1] Furthermore, in challenging that removal, Plaintiff argues that the amount in controversy–both as alleged by Plaintiff in its Complaint and as established by extrinsic evidence outside the four

---

[1]     Section 1332(a) provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ." 28 U.S.C. § 1332(a).

4

corners of that Complaint–does not exceed $75,000.  *See*, *supra*, Part I of this Report-Recommendation.

After carefully reviewing Plaintiff's letter brief (and the tape recording of the Court's teleconference on July 18, 2007), I liberally construe Plaintiff's attack on Defendants' removal of this action from state to federal court as challenging two different aspects of that removal: (1) whether Defendants complied with the removal procedure, as established by 28 U.S.C. § 1446, and (2) whether the Court has subject matter jurisdiction over Plaintiff's claims, as provided by 28 U.S.C. § 1332.  While this distinction may be subtle, I believe that it is clear from a close reading of the applicable statutes and rules.  For example, 28 U.S.C. § 1446 establishes the *procedure* for removal, which includes a requirement that the defendant file a notice of removal containing a "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).[2]  On the other hand, 28 U.S.C. §§ 1331 and 1332 establish when a federal court *actually* has subject matter jurisdiction over a claim (including a claim that has been removed from federal court from state court).[3]

_____

[2]     For this reason, when this removal procedure is challenged, the validity of the procedure is determined by reference to 28 U.S.C. § 1446, and not to any of the Federal Rules of Civil Procedure (such as Rule 12(b)(1) or Rule 12(h)(3), which concern a federal court's lack of subject matter jurisdiction).  *See* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1024 & notes 3, 4 (3d ed. 2007) ("[T]he procedure for the removal itself is set out in the Judicial Code and is not governed by the federal rules.  Hence, such matters as the validity of the service of the petition for removal are to be determined by reference to the removal statute [28 U.S.C. § 1446], rather than the rules.") [collecting cases]; *see also* 28 U.S.C. § 1447(c) (setting forth the procedure for requesting the remand of an action to state court *after* the removal procedure, set forth by 28 U.S.C. § 1446, has been completed).

[3]     When subject matter jurisdiction is challenged *after* removal, the validity of that jurisdiction is determined by reference to 28 U.S.C. §§ 1447, 1331, and 1332.  *See* 28 U.S.C. §§ 1447(c) ("A motion to remand the case on the basis of . . . lack of subject matter jurisdiction [under 28 U.S.C. §§ 1331, 1332] . . . [may be made at any time before final judgment].  If at any

### 1.      Challenge to Removal Procedure

Here, the first issue (i.e., whether Defendants complied with the removal procedure, as established by 28 U.S.C. § 1446) is disposed of with relative ease.  In their notice of removal, Defendants stated, "The Court has original jurisdiction by virtue of 28 U.S.C. 1332, as this case involves claims between parties of diverse citizenship and the amount in controversy, *as plead by plaintiff*, exceeds $75,000, as required and set forth in Section 1332."  (Dkt. No. 1, Part 1, ¶ 1 [emphasis added].)  Defendants elaborated on the italicized assertion by citing the portions of Plaintiff's Complaint in which Plaintiff claimed damages in excess of $75,000.  (*Id*. at ¶ 5.)  Specifically, Defendants cite Paragraphs 21, 24, 25, 26, 27 and 28 of Plaintiff's Complaint, and the "Prayer" portion of that Complaint.  (*Id*. ¶ 5.)  Finally, Defendants attached a copy of that Complaint, which, at the aforementioned portions, contains references to the following amounts of money as damages allegedly owed by Defendants to Plaintiff: (1) $54,975.00 for "stipulated damages . . . for the reasonable amount of lost future revenue [that] would have been earned [by Plaintiff] under the Franchise Agreement"; (2) $2,665.00 for "payments [that Defendant Chumley has taken] from [Plaintiff's] customers for prepaid services"; (3) $6,793.84 for the "sum of money [owed by Defendant Chumley] for royalties and unpaid bank fees for bounced payments"; and (4) total damages in the amount of $125,433.84 "[b]y reason of the above

---

time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also* 4 Wright & Miller, *Federal Practice and Procedure*, § 1024 & note 1 ("As specified in Rule 81(c) [of the Federal Rules of Civil Procedure], the Federal Rules of Civil Procedure [including Rule 12, which permits dismissals for lack of subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332] govern the procedure to be followed in a civil action after its removal from a state court; the action is treated as though it originally had been commenced in federal court and the federal court has full and exclusive jurisdiction over the case.") [citing cases].

[Paragraphs]," which include Paragraph 12 alleging additional damages (resulting "defaults in . . . pay[ing] amounts owed to Tech Data (a third-party supplier where [Plaintiff] has a corporate account), royalties, handheld fees and fees owed for local advertising") in the amount of $16,653.80, and Paragraph 9 alleging "reasonable attorneys fees" in the amount of (by contractual agreement) 25 percent of any money judgment.  (*Id*. at Part 2.)

By my calculation, the amount in controversy plausibly suggested by the factual allegations of Plaintiff's Complaint is between $81,087.64 (without reasonable attorney's fees) and $101,359.55 (with reasonable attorney's fees).[4]  Under these circumstances, I find that Defendants have met their initial burden of providing a "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).

In reaching this conclusion, I note that 28 U.S.C. § 1446(a) uses the exact term as is used in Rule 8 of the Federal Rules of Civil Procedure, namely, the term "short and plain statement of the grounds . . . ."  *See* Fed. R. Civ. P. 8(a) ("A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the grounds upon which the court's jurisdiction depends . . . .").  The practical effect of Section 1446's echoing of this language of Rule 8 is to invoke Rule 8's liberal notice-pleading standard during the removal procedure.  *See White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980) ("The petition to remove is analogous to a pleading. . . .  The modern rules of notice pleading apply with as much vigor to petitions for removal as they do to other pleadings . . . .") [internal quotation marks and citations omitted]; 14C Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and*

---

[4]      *Cf. Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965-74 (2007) (clarifying that for a pleading to state a claim, under Rule 8, sufficient facts must be alleged to raise a right to relief above the speculative level to a "plausible" level).

*Procedure* § 3733 at 536-37 & n. 15 (3d ed. 2007) ("[T]he same liberal rules employed in testing

the sufficiency of a pleading should apply to appraising the sufficiency of a defendant's notice of

removal.") [collecting cases].[5]  This is why in the case of *Dow Corning Corp. v. Schpak*, 65

F.R.D. 72 (N.D. Ill. 1974), for example, the United States District Court for the Northern District

of Illinois found that the then-$10,000 jurisdictional amount was sufficiently stated in a

defendant's petition for removal that stated that the plaintiff's complaint alleged the breach of a

contract which provided for compensation to the plaintiff of over $30,000 per year, *even though*

*the plaintiff had not stated any specific amount in dispute in his complaint*.  *Dow Corning Corp.*

*v. Schpak*, 65 F.R.D. 72, 75 (D. Ill. 1974).

### 2.      Challenge to Court's Actual Subject Matter Jurisdiction

It is the second issue (i.e., whether the Court has subject matter jurisdiction over

Plaintiff's claims, as provided by 28 U.S.C. § 1332) that is somewhat more complex.  I begin my

analysis of this issue by observing that where, as here, the jurisdictional amount is challenged

through a motion to remand filed pursuant to 28 U.S.C. § 1447, the party opposing the motion

bears the burden of showing by a preponderance of the evidence, and with competent proof, that

the claim in question is in excess of the jurisdictional amount ($75,000).  *United Food &*

*Commercial Workers Union v. Centermark Prop.*, 30 F.3d 298, 304-305 (2d Cir. 1994) [citation

omitted]; *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)

[citations omitted].  The ability to resort to extrinsic evidence (i.e., evidence outside the four

---

[5]      *See also Mignogna v. Sair Aviation, Inc.*, 679 F. Supp. 184, 187 (N.D.N.Y. 1988) (Munson, C.J.) (finding that factually vague petition for removal satisfied modest requirement of 28 U.S.C. § 1446), *accord Harris Diamond Co. v. Army Times Pub. Co.*, 280 F. Supp. 273, 274 (S.D.N.Y. 1968), *Harlem River Produce Co. v. Aetna Cas. & Sur. Co.*, 257 F. Supp. 160, 163-64 (S.D.N.Y. 1965).

corners of the plaintiff's complaint) is one of the main differences between the standard

governing a motion for remand 28 U.S.C. § 1447 (which looks at whether the federal court

actually has subject-matter jurisdiction) and the standard governing the removal procedure under

28 U.S.C. 1446 (which, again, looks at merely whether the defendant has provided a "short and

plain statement of the grounds for removal").[6]

Of course, whether it is *generally* permissible for a federal court to resort to extrinsic

evidence on a motion to remand is a somewhat different issue than whether it is, *in this*

*particular circumstance*, appropriate for this Court to resort to extrinsic evidence.  In their letter

briefs,[7] the parties appear to recognize the general applicability of what is known as "the well-

pleaded complaint rule," under which a plaintiff is deemed to be the "master of the complaint,"

and a court will generally afford deference to the plaintiff's monetary demand.[8]  However, the

---

[6]      *Cf. Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp.2d 394, 404 (S.D.N.Y. 2002) (explaining that Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms, "facial challenges" to the sufficiency of a pleading's allegations regarding jurisdiction, in which the court's review is confined to the pleadings, and attacks on the "factual challenges" to the court's subject matter jurisdiction, in which the court's review is not confined to the pleadings, but extends to extraneous evidence submitted with the motion).

[7]      (*See* Dkt. No. 10, Part 1, at 2 [Defs.' Letter Brief, arguing that "a rebuttable presumption exists that the face of the complaint is a good faith representation of the actual amount in controversy"] [internal quotation marks and citations omitted]; Dkt. No. 13, at 3 [Plf.'s Letter Brief, relying on *Maxons Restorations, Inc. v. Newman*, 292 F. Supp.2d 477, 481-82 [S.D.N.Y. 2003], which recognizes the existence of at least some "deferen[ce]" to a plaintiff's complaint, during a plaintiff's motion for remand, as provided by *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291 (2d Cir. 2000)].)

[8]      *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.")  [citation omitted]; *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) ("Under the well pleaded complaint rule, the plaintiff is the master of the complaint . . . ."); *Centermark*, 30 F.3d at 305 ("[T]he established view [is] that [the] plaintiff is

parties appear to differ on *when* this deference is overcome (permitting the court to look outside the pleadings). Defendants appear to argue that this deference is overcome (and the court may therefore look outside the pleadings) only where the evidence outside the pleadings shows "to a legal certainty" that the plaintiff's claim is really less than the jurisdictional amount.[9] Plaintiff appears to argue that this deference is overcome (and the court may therefore look outside the pleadings) where evidence exists that the plaintiff's allegations of monetary damages were not made "in good faith."[10] After carefully reviewing the parties' arguments, and the applicable law, I am unable to conclude with any confidence that either party is correct. I note that the more likely rule, in circumstances such as these (where the "good faith" of Plaintiff, during the pleading process, is not the issue as much as is its mathematical error), appears to be that a court may look to such evidence outside the pleadings only where, as stated by the Second Circuit, "the pleadings themselves are inconclusive as to the amount in controversy." *Centermark*, 30 F.3d at 305 [citations omitted].[11] In any event, I need not, and do not, address this issue because I assume, for the sake of argument, that the circumstances of this case warrant an examination of evidence outside of the four corners of Plaintiff's Complaint.

---

the master of its claim whose monetary demand is to be accorded deference . . . .") [internal quotation marks and citation omitted]; *cf. Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) ("[The defendant] has the burden [on the plaintiff's motion to remand] of proving that it appears to a reasonable probability that the [plaintiff's] claim is in excess of the statutory jurisdictional amount. . . . To determine whether that burden has been met, we look first to the plaintiffs' complaint and then to [the defendant's] petition for removal.").

[9]      (*See* Dkt. No. 10, Part 1, at 2 [Defs.' Letter Brief];

[10]      (*See* Dkt. No. 13, at 3 [Plf.'s Letter Brief].)

[11]      Such a rule would be akin to the long-established common-law rule governing the construction of contracts.

Even viewing all of that evidence, however, I am unable to conclude that Defendants have failed to meet their burden on this motion.  In its letter brief, Plaintiff concedes that the amount in controversy in this case is $64,433.84, excluding reasonable attorney's fees.  (Dkt. No. 13, at 1, 5.)  Plaintiff arrives at this figure by adding together the following amounts: (1) $54,975.00 for "stipulated damages . . . for the reasonable amount of lost future revenue [that] would have been earned [by Plaintiff] under the Franchise Agreement"; (2) $2,665.00 for "payments [that Defendant Chumley has taken] from [Plaintiff's] customers for prepaid services"; and (3) $6,793.84 for the "sum of money [owed by Defendant Chumley] for royalties and unpaid bank fees for bounced payments."  (Dkt. No. 13, at 1-2 [Plf.'s Letter Brief].)

The only damages amounts (alleged by Plaintiff in its Complaint) that Plaintiff now takes issue with, other than attorney's fees, are the following: (1) the total amount of damages alleged, namely, $125,433.84; and (2) the amount of damages allegedly resulting from "defaults in . . . pay[ing] amounts owed to Tech Data (a third-party supplier where [Plaintiff] has a corporate account), royalties, handheld fees and fees owed for local advertising," namely, $16,653.80.  (*Id.*)  Both of these amounts, Plaintiff argues, were alleged in error (or at least with some ambiguity as to their relevance), and are not at issue in this action, to a legal certainty.  (*Id*. at 1-4.)  Again, for the sake of argument, I will assume that Plaintiff is correct.

The problem with Plaintiff's argument is that I find that an award of attorney's fees should be included in the total amount of damages alleged for jurisdictional purposes, under the circumstances.  It is well established in the Second Circuit (and apparently elsewhere) that "attorney's fees may be used to satisfy the amount in controversy . . . where they are recoverable as of right pursuant to statute or *contract*."  *In re Ciprofloxacin Hydrochloride Antitrust*

*Litigation*, 166 F. Supp.2d 740, 755-56 (E.D.N.Y. 2001) [emphasis added; citations omitted]; *see also Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972) ("[I]t is settled that [attorneys'] fees may not properly be included in determining the jurisdictional amount unless they are recoverable as a matter of right. . . .  In the absence of a *contract* or statutory authority . . . plaintiffs cannot recover attorneys' fees in addition to punitive damages.") [emphasis added; citations omitted], *vacated on other grounds,* 409 U.S. 56 (1972); 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 3712 & n.6 (3d ed. 2007) ("The law is now quite settled . . . that the amount expended for attorney's fees are a part of the matter in controversy for subject matter jurisdiction purposes when they are provided for by contract . . . .") [collecting cases].

Indeed, in a case factually similar to ours, the Southern District used attorney's fees to satisfy the amount in controversy because the plaintiff was entitled to collect them pursuant to its Franchise Agreement with the defendant.  *ASI Sign Sys., Inc. v. Architectural Sys., Inc.*, 98-CV-4823, 1999 WL 553825, at *2 (S.D.N.Y. July 29, 1999).  Furthermore, cases exist including attorneys fees in the jurisdictional amount where those fees were required in non-franchise agreements.  *See Ins. Co. of State of Pa. v. Waterfield*, 371 F. Supp.2d 146, 149 (D. Conn. 2005) (surety bond contract); *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, 93-CV-4135, 1994 WL 673519, at *11 (S.D.N.Y. Dec. 1, 1994) (lease agreement).

I emphasize that the current case is distinguishable from cases in which the award of attorney's fees was *permitted* by a contract, but was not *mandated* by that contract.  *See Maxons Restorations, Inc. v. Newman*, 292 F. Supp.2d 477, 482 (S.D.N.Y. 2003) ("under the employment contract, the arbitrators could, but are not required, to award [the plaintiff] [attorney's fees]

should it prevail").  In addition, the current case is distinguishable from cases in which the award

of reasonable attorneys fees was mandated in a contract, but was not *defined* in that contract.  *See*

*Houston v. Scheno*, 06-CV-2901, 2007 WL 2230093, at *3 (E.D.N.Y. July 31, 2007) (although

"reasonable attorney's fees" had to be included in jurisdictional amount because lease agreement

required payment of those fees, those fees did not help defendant in establishing required

jurisdictional amount since the fees were not defined in lease agreement).

Here, Plaintiff has, in its Complaint, expressly requested an award of damages that

includes "reasonable attorneys fees," and has expressly alleged that Article XVIII(E) of the

parties' Franchise Agreement *stipulates* that "reasonable attorneys fees" shall consist of 25

percent of any money judgment "without necessity of proof . . . ."  (Dkt. No. 1, Part 2, ¶ 9 &

"Wherefore" Clause [Plf.'s Compl.].)  I have no reason to believe that Article VIII(E) is not

worded as Plaintiff alleges it to be.  Nor do I have any reason to believe that Article VIII(E) is

not, for some reason, valid and enforceable.  I note that Plaintiff has not, in its letter brief,

renounced the validity and enforceability of Article XVIII(E).  (*See generally* Dkt. No. 13, at 4-5

[Plf.'s Letter Brief].)  Under the circumstances, the breach-of-contract claim asserted in

Plaintiff's Complaint, by necessity, places in "controversy" (under 28 U.S.C. § 1332) Plaintiff's

"reasonable attorneys fees," which consist of 25 percent of any money judgment.

Applying the definition of "reasonable attorneys fees" in Article XVIII(E), I find that

those fees amount to 25 percent of $64,433.84 (the amount of damages that Plaintiff has admitted

in its Letter Brief), or $16,108.46.  I further find that the total amount at stake in this action is

$80,542.30, which exceeds the jurisdictional amount required by 28 U.S.C. § 1332.  I therefore

recommend that the Court deny Plaintiff's motion to remand.

13

**B.      Defendants' Cross-Motion to Dismiss, or Transfer Venue, or Compel Arbitration**

Defendants' cross-motion requests (1) an Order dismissing Plaintiff's Complaint based on lack of personal jurisdiction, or, in the alternative, (2) an Order transferring this action to the United States District Court for the Western District of Louisiana, under 28 U.S.C. § 1401(a), or, in the alternative, (3) an Order compelling Plaintiff to participate in arbitration with Defendants, as demanded by Defendants pursuant to the arbitration clause in the Agreement.  (Dkt. Nos. 18-19.)

**1.      Request for Order Dismissing Plaintiff's Complaint for Lack of Personal Jurisdiction**

In arguing that Plaintiff's Complaint should be dismissed because this Court lacks personal jurisdiction over Defendants, Defendants appear to combine two arguments that, I believe, are more properly considered as being distinct from one another: first, they argue that they had insufficient *contacts* with the State of New York to confer upon this Court personal jurisdiction over Defendants;[12] and second, they argue that they did not *consent* to such personal jurisdiction because no jurisdiction-selection clause is contained in the Franchise Agreement and, even if such a clause were contained in that Agreement (for example, as part of the Agreement's forum-selection clause), it should not be enforced under the circumstances.[13]

The reason I say that the two arguments are distinct from each other is that the two grounds for personal jurisdiction that are the subject of the arguments (i.e., the defendant's

---

[12]      (Dkt. No. 19, at 1-3, 11-12 [Defs.' Mem. of Law]; Dkt. No. 29, at 1-2, 5-6 [Defs.' Reply Memo. of Law].)

[13]      (Dkt. No. 19, at 3-19 [Defs.' Mem. of Law]; Dkt. No. 29, at 3-7 [Defs.' Reply Memo. of Law].)

14

*contacts* with the forum state and the defendant's *consent* to personal jurisdiction) are independent of one another.  In other words, it is not necessary to engage in the contacts analysis (also known as the traditional personal jurisdiction analysis) if a defendant has consented to such jurisdiction due to the presence of a jurisdiction-selection clause in an agreement (and vice versa).[14]  As a result, I will take each argument in turn.

### a.    Contacts Analysis

Defendants briefly refer to the legal standard governing a federal court's traditional personal jurisdiction analysis.[15]  Under the circumstances, I find that a more in-depth description of that legal standard is appropriate.  The legal standard is well-established (if somewhat complex).  "As a non-domiciliary, [Defendants] will only be subject to personal jurisdiction in New York if: (1) [they] fall[] within the terms of New York's long arm statute, Civil Practice Law ('CPLR') § 302, and (2) [their] contacts with New York State satisfy the requirements of Constitutional Due Process."  *Micro-Assist, Inc. v. Cherry Communications, Inc.*, 961 F. Supp.

---

[14]    (*See* Dkt. No. 19, at 5 [Defs.' Mem. of Law, arguing "[a]bsent such a [forum-selection jurisdiction] clause, the court must examine whether defendant has minimum contacts with the State and whether the exercise of personal jurisdiction is statutorily and constitutionally permissible . . . .  However, in actions involving a valid and enforceable forum-selection clause, it is the validity and effect of such [a] clause, and not the party's minimum contacts with the forum, which is determinative."] [citing cases].)  *See also Atl. Mut. Ins. Co. v. M/V HUMACAO*, 169 F. Supp.2d 211, 214-15 (S.D.N.Y. 2001) (language in contract agreeing to "the exclusive jurisdiction of the U.S. District Court, Southern District of New York, over all legal actions and disputes involving the terms and conditions of this Agreement" constituted consent to personal jurisdiction of that court, which was enforceable "without the need to engage in traditional personal jurisdiction analysis"); *Hearst Entm't, Inc. v. Multichannel Distrib. Servs. A.V.V.*, 96-CV-0310, 1997 U.S. Dist. LEXIS 1686, at *5 (S.D.N.Y. Feb. 19, 1997) ("In actions involving forum selection clauses . . ., the minimum contacts analysis is unnecessary so long as the clause is accompanied by a consent to personal jurisdiction.") [citation omitted].

[15]    (*See* Dkt. No. 19, at 5-6 [Defs.' Mem. of Law].)

462, 464 (E.D.N.Y. 1997) [citation omitted].  As a result, "[e]ven if the exercise of jurisdiction

under a state's long-arm statute is permissible as a matter of state law, the court then must decide

whether such exercise comports with the requisites of due process."  *Fort Knox Music Inc. v.*

*Baptiste,* 203 F.3d 193, 196 (2d Cir. 2000) [internal quotation marks and citation omitted],

*accord*, *Great Northern Ins. Co. v. Constab Polymer-Chemie*, 01-CV-0882, 2007 WL 2891981,

at *3 (N.D.N.Y. Sept. 28, 2007) (Mordue, C.J.) [citations omitted].

It should be noted that the referenced "requisites of due process" are satisfied where

"'minimum contacts' exist between the defendant and the forum state such that the maintenance

of the suit does not offend traditional notions of fair play and substantial justice."  *Great*

*Northern Ins. Co.*, 2007 WL 2891981, at *3 (citing *Int'l Shoe Co. v. State of Washington*, 326

U.S. 310, 316 [1945]).  It should also be noted that, generally, the referenced "minimum

contacts" requirement is aimed at ensuring that individuals have "fair warning" that a particular

activity may subject them to the jurisdiction of a foreign sovereign.  *Id*. [citing *Shaffer v. Heitner*,

433 U.S. 186, 218 [1977] [Stevens, J., concurring]).

However, the two inquiries that form the traditional personal jurisdiction analysis (i.e.,

whether the defendant falls within the terms of the state long-arm statute, and whether the

requisites of due process are satisfied) are not wholly unrelated.  For example, where, as here, the

applicable portion of the state long-arm statute regards an assertion of "specific jurisdiction"[16]

over an out-of-state defendant, the referenced "fair warning" requirement (which is the main

---

[16]      "'Specific' jurisdiction contrasts with 'general' jurisdiction, pursuant to which 'a
State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the
defendant's contacts with the forum.'"  *Great Northern Ins. Co.*, 2007 WL 2891981, at *4, n.4
[citation omitted].

purpose of the "minimum contacts" requirement in the due process inquiry) is satisfied because the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Id.* [citations omitted].

Here, the applicable portion of the state long-arm statute does indeed regard an assertion of "specific jurisdiction" over Defendants. In particular, the applicable long-arm statute is New York's long-arm statute, N.Y. Civ. Prac. L. & R. § 302.[17] In pertinent part, N.Y. Civ. Prac. L. & R. § 302 provides as follows: "**(a) Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." N.Y. Civ. Prac. L. & R. § 302(a)(1) [emphasis in original].

Under the circumstances, I find that Defendants' contacts with New York State were sufficient to bring them within the above-described long-arm statute. For the sake of brevity, I will assume that Defendant Chumley was physically located in Louisiana when he signed the Franchise Agreement at issue in this action on or about January 24, 2006. The problem (at least from Defendants' perspective) is that it is clear from the record that, *before* Defendant Chumley signed the Franchise Agreement, (1) Defendant Chumley had responded to Plaintiff's solicitation

---

[17]     *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57-59 (2d Cir. 1985) ("[P]ersonal jurisdiction over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the court sits."); *LaCorte Elec. Const. & Maint., Inc. v. Centron Sec. Sys., Inc.*, 894 F. Supp. 80, 82 (N.D.N.Y. 1995) (Hurd, M.J.) ("It is well settled that the District Court borrows the long-arm statute of the forum. . . . In this case, Civ. Pract. L. & R. § 302 is the New York State long-arm statute.").

by communicating with Plaintiff at "[its] facility listed in the solicitation" (which was presumably Plaintiff's corporate headquarters in Syracuse, New York),[18] (2) upon Defendant Chumley's request, Plaintiff forwarded the Franchise Agreement to Defendant Chumley from Plaintiff's corporate headquarters in Syracuse, New York, not once but *twice* (first on or before December 23, 2005, and again on or about January 18, 2006),[19] and (3) Defendant Chumley unsuccessfully attempted to renegotiate the terms of the Agreement with Plaintiff's "management" (who were, at the time, presumably located at Plaintiff's headquarters in Syracuse, New York).[20]  It is also clear that New York State was the place to which Defendant Chumley returned the Agreement, once he signed it (on or about January 24, 2006).[21]

More importantly, Plaintiff's CEO, David Milman, was physically present in New York when he signed the Agreement on behalf of Plaintiff, on or about March 30, 2006, rendering the

---

[18]     (Dkt. No. 20, Part 1, at 1 [Affid. of Chumley]; *see also* Dkt. No. 29, at 1 [Defs.' Reply in Support of Cross-Motion, acknowledging that, based on an advertisement placed by Rescuecom, Defendant Chumley "contacted the Rescuecom facility listed in the solicitation and requested a franchise information package . . . ."].)

[19]     (Dkt. No. 25, Part 1, ¶¶ 10.a., 11 [Affid. of Milman]; Dkt. No. 25, Part 3 [Ex. B to Affid. of Milman]; Dkt. No. 25, Part 5 [Ex. D to Affid. of Milman]; Dkt. No. 20, Part 1, at 1 [Affid. of Chumley]; *see also* Dkt. No. 29, at 1 [Defs.' Reply in Support of Cross-Motion, acknowledging that Rescuecom's Franchise Director, Robert Jamison, sent Defendant Chumley a Uniform Franchise Offering Circular, which included a copy of the Franchise Agreement, at some point before mid-January of 2006, and that Plaintiff sent Defendant Chumley the Franchise Agreement in mid-January of 2006].)

[20]     (Dkt. No. 20, Part 1, at 1 [Affid. of Chumley].)

[21]     (Dkt. No. 25, Part 1, ¶ 10.b. [Affid. of Milman]; Dkt. No. 25, Part 2, at 8 [Ex. A to Affid. of Milman];  Dkt. No. 25, Part 7, at 4 [Ex. F to Affid. of Milman]; Dkt. No. 27, ¶ 4 [Corrected Affid. of Milman]; Dkt. No. 20, Part 1, at 1 [Affid. of Chumley]; *see also* Dkt. No. 29, at 2 [Defs.' Reply in Support of Cross-Motion, acknowledging that Defendant Chumley executed the Franchise Agreement on January 25, 2006, and that "he paid for and purchased the Franchise[] from Rescuecom" on January 30, 2006].)

Agreement fully executed.[22]  Furthermore, Defendant Chumley was physically present in

Syracuse, New York, when, on or about March 30, 2006, he received a copy of the fully executed

Agreement from Mr. Milman.[23]

But New York State was not simply the site of key events leading up to, and constituting,

the final execution of the parties' Franchise Agreement.  New York State was also the site of

several important events that enabled Defendants to operate their franchise.  Specifically, New

York State was where, immediately following the final execution of the Agreement, Defendant

Chumley spent an entire week receiving training from Plaintiff.[24]  New York State is also where,

during Defendants' subsequent operation of their franchise, Plaintiff "operate[d] a national call

center 24 hours a day, 365 days a year," which it used to, among other things, receive calls from

customers and route those calls to franchisees.[25]  Moreover, New York State is where Plaintiff

received money, and from where it issued automated bills, with regard to certain accounts

(apparently including accounts related to Defendants' operation of their franchise, since receiving

---

[22]     (Dkt. No. 27, ¶ 7 [Corrected Affid. of Milman]; Dkt. No. 20, Part 1, at 1 [Affid. of Chumley]; *see also* Dkt. No. 29, at 2 [Defs.' Reply in Support of Cross-Motion, acknowledging that Rescuecom CEO, David Milman, was physically present in Syracuse, New York, when he signed the Franchise Agreement, rendering it fully executed].)

[23]     (Dkt. No. 27, ¶¶ 6-7 [Corrected Affid. of Milman]; Dkt. No. 20, Part 1, at 1 [Affid. of Chumley]; *see also* Dkt. No. 29, at 2 [Defs.' Reply in Support of Cross-Motion, acknowledging that, on March 30, 2006, Defendant Chumley received a fully executed copy of the Franchise Agreement from Rescuecom CEO, David Milman, in Syracuse, New York].)

[24]     (Dkt. No. 25, Part 1, ¶ 10.c. [Affid. of Milman]; Dkt. No. 27, ¶ 4 [Corrected Affid. of Milman]; *see also* Dkt. No. 29, at 2 [Defs.' Reply in Support of Cross-Motion, acknowledging that Defendant Chumley did receive training in New York State for a week].)

[25]     (Dkt. No. 25, Part 1, ¶ 4 [Affid. of Milman]; Dkt. No. 29, at 2 [Defs.' Reply in Support of Cross-Motion, acknowledging that, during the time in question, Plaintiff operated such a call service in New York State].)

"assist[ance] in billing and collection" was one of the reasons Defendant Chumley contracted

with Plaintiff).[26]

Finally, not only do I find that Defendants transacted business in New York State, I find

that the causes of action asserted in Plaintiff's Complaint (*see* Dkt. No. 1, Part 2, ¶¶ 6-36) arose

out of, or related to, Defendants' contacts with New York State.  *See Paribas Corp. v. Shelton*

*Ranch Corp.*, 742 F. Supp. 86, 88-90, 92 (S.D.N.Y. 1990) (Texas corporations had sufficient

contacts with New York to subject them to personal jurisdiction there under its long-arm statute

in breach-of-contract dispute with Plaintiff, where [1] Plaintiff was organized and operated in

New York, [2] the corporations negotiated terms of an engagement letter with Plaintiff while

Plaintiff was in New York, [3] the corporations' president met with Plaintiff's representatives in

New York over a two-day period, and [4] several of the documents at issue in the case were

executed, or partially executed, in New York).

For these reasons, I recommend that the Court deny Defendants' motion to dismiss for

lack of personal jurisdiction.

**b.      Consent-to-Jurisdiction Analysis**

However, even if the Court did not have personal jurisdiction over Defendants pursuant

to a contacts analysis, the Court would have personal jurisdiction over Defendants pursuant to the

express terms of the Franchise Agreement signed by the parties.  Specifically, that Agreement

---

[26]      (Dkt. No. 25, Part 1, ¶ 4 [Affid. of Milman, stating that, from its headquarters in Syracuse, New York, Plaintiff provided several services to its franchises, including accounting services]; Dkt. No. 29, at 1, 2 [Defs.' Reply in Support of Cross-Motion, asserting that one of the reasons Defendant Chumley sought a franchise arrangement was to receive "assist[ance] in billing and revenue collection," and acknowledging that, during the time in question, Plaintiff received money in New York State on certain accounts, from which it issued automated bills on certain accounts].)

provided, *inter alia*, that the "Franchisee acknowledges that this Agreement is entered into in Onondaga County, New York, and that the *exclusive jurisdiction* . . . for any action sought to be brought by either party, except those claims required to be submitted to arbitration, . . . [is] the appropriate state or federal court sitting in Onondaga County, New York . . . ." (Dkt. No. 20, Part 2, ¶ XXX.B. [Ex. 1 of Affid. of Chumley, attaching portion of Franchise Agreement] [emphasis added], *accord*, Dkt. No. 25, Part 2, ¶ XXX.B. [Ex. A to Affid. of Milman].)

A little more than a year ago, Chief Judge Norman A. Mordue characterized an earlier version of the precise clause at issue in this action as a "consent-to-jurisdiction clause"–even though that version did not use the words "exclusive jurisdiction," as does the version of the clause at issue in this case.  *See Rescuecom Corp. v. Hyams*, 477 F. Supp.2d 522, 532-33 (N.D.N.Y. 2006) (Mordue, C.J.) (interpreting prior version of clause, which read, "Franchisee acknowledges that this Agreement is entered into in Onondaga County, New York, and that the venue for any action sought to be brought be either party . . . shall be . . . the appropriate state or federal court sitting in Onondaga County, New York, with jurisdiction over the matter").[27]

Furthermore, such conferrals of exclusive jurisdiction have been specifically recognized as including *consents to personal jurisdiction*.  *See, e.g., Orix Fin. Servs., Inc. v. Barnes,* 05-CV-9665, 2007 WL 2825881, at *3 (S.D.N.Y. Sept. 28, 2007) (language in contract granting

---

[27]     This is significant because, if anything, the use of the words "exclusive jurisdiction" in a selection clause militates in *favor* of a finding that the parties consented to the jurisdiction at issue.  *See Luce v. Edelstein*, 802 F.2d 49, 57 & n.4 (2d Cir. 1986) (parties consented to jurisdiction of Supreme Court of New York, New York County, where clause in contract signed by the parties provided, in pertinent part, "[t]he parties hereby confer exclusive jurisdiction in any . . . action or proceeding [brought by a party hereto against any other party and arising out of this Agreement or any breach thereof], upon the Supreme Court of the State of New York, County of New York").

"exclusive jurisdiction and venue of courts located in the State and County of New York"

conferred upon the Court personal jurisdiction over defendants); *Atl. Mut. Ins. Co. v. M/V*

*HUMACAO*, 169 F. Supp.2d 211, 214-15 (S.D.N.Y. 2001) (language in contract agreeing to "the

exclusive jurisdiction of the U.S. District Court, Southern District of New York, over all legal

actions and disputes involving the terms and conditions of this Agreement" constituted consent

to personal jurisdiction of that court, which was enforceable "without the need to engage in

traditional personal jurisdiction analysis"); *cf. Int'l Private Satellite Partners, L.P. v. Lucky Cat*

*Ltd.*, 975 F. Supp. 483, 485-86 (W.D.N.Y. 1997) (Larimer, C.J.) (defendant consented to

personal jurisdiction of New York where each of four contracts at issue provided, *inter alia*, that

"the parties hereby irrevocably submit to the jurisdiction and venue in the State of New York in

connection with any action to enforce or interpret this Agreement").

　　　As the Appellate Division, First Department, astutely noted, if clauses conferring

jurisdiction upon courts required those courts to *independently* have personal jurisdiction over a

party in order to hear a case against that party, then "the consent to jurisdiction in the . . .

agreement would be unnecessary and superfluous." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*

*v. Worley*, 690 N.Y.S.2d 57, 59 (N.Y. App. Div., 1st Dept., 1999) (agreement providing that "any

action or proceeding of any kind against the undersigned arising out of or by reason of this

 . . . Agreement may be brought in any state or federal court of competent jurisdiction in and of

the County and State of New York" constituted a consent to personal jurisdiction of such courts).

　　　For these reasons, I reject Defendants' legal argument that the clause in question does not

constitute a consent to jurisdiction.  I note also that, in making their legal argument to that effect,

Defendants attempt (based on a North Carolina state court decision) to categorize all selection

clauses contained in contracts into *one* of three types (i.e., choice-of-law clauses, consent-to-

jurisdiction clauses, and forum-selection clauses).  (Dkt. No. 19, at 3-4 [Defs.' Mem. of Law].)

In so doing, Defendants fail to appreciate the fact that (1) selection clauses may, and often do,

overlap in their purpose and effect, (2) a jurisdiction/forum-selection clause may result in a

consent to jurisdiction without the use of the words "the parties submit to jurisdiction," and (3)

here, the conferral of jurisdiction is not merely "permissive" but is "mandatory," since it provides

that the courts sitting in Onondaga County shall have *exclusive* jurisdiction over any action

brought under the Franchise Agreement.[28]  In effect, Defendants' construction of the clause in

question would leave Plaintiff *without any legal remedy whatsoever* if the courts sitting in

Onondaga County did not *independently* have personal jurisdiction over Defendants.  While my

research on the subject is by no means exhaustive, I have found no cases effecting such a result

based on any selection clause, much less the jurisdiction-selection clause in question.

I also reject Defendants' related argument that the Court should not, under the

circumstances, enforce the consent-to-jurisdiction clause in question.  The legal standard

governing consent-to-jurisdiction clauses (like the legal standard governing the above-described

"contact" analysis) is somewhat complex.  First, it is appropriate to observe that the legal

standard governing consent-to-jurisdiction clauses is the same as the legal standard governing

forum-selection clauses.[29]

---

[28]      *See New York Marine & Gen. Ins. Co. v. M/V Admiralengracht*, 97-CV-7402,
1999 U.S. Dist. LEXIS 6152, at *5 (S.D.N.Y. Apr. 28, 1999) ("Here, the parties have agreed
merely that the [bank] 'shall' have jurisdiction, but instead that the Amsterdam court shall have
'exclusive jurisdiction' . . . .  Therefore, Clause 25 of the bills of lading is a mandatory clause.").

[29]      *See Home Funding Group, LLC v. Dougherty*, 06-CV-1234, 2007 U.S. Dist.
LEXIS 41376, at *12-21 (D. Conn. June 7, 2007) (subjecting consent-to-jurisdiction clause to

Recently, the Second Circuit explained that the determination of whether to enforce a

forum-selection clause involves a four-part analysis:

> The first inquiry is whether the clause was reasonably
> communicated to the party resisting enforcement. . . .  The second step
> requires us to classify the clause as mandatory or permissive, i.e., to
> decide whether the parties are required to bring any dispute to the
> designated forum or simply *permitted* to do so. . . .  Part three asks
> whether the claims and parties involved in the suit are subject to the
> forum selection clause. . . .
>
> If the forum clause was communicated to the resisting party,
> has mandatory force and covers the claims and parties involved in the
> dispute, it is presumptively enforceable. . . .  The fourth, and final, step
> is to ascertain whether the resisting party has rebutted the presumption
> of enforceability [that has been created under the circumstances]
> making a sufficiently strong showing that enforcement would be
> unreasonable or unjust, or that the clause was invalid for such reasons
> as fraud or overreaching. . . .

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) [internal quotation marks and

citations omitted].

Here, I find that the first inquiry is answered in the affirmative–the clause in question was

*reasonably* communicated to Defendants, under the circumstances.  In particular, I note the

following: (1) before signing the Franchise Agreement, Defendant Chumley had *twice* been sent

that Agreement (first on or before December 23, 2005, and again on or about January 18, 2006),[30]

---

same legal standard governing enforceability of forum-selection clauses), *accord*, *M/V
Admiralengracht*, 1999 U.S. Dist. LEXIS 6152, at *5-6.  I note that courts often refer to consent-
to-jurisdiction clauses as a type of "forum-selection" clause.  *See*, *e.g.*, *Home Funding Group,
LLC*, 2007 U.S. Dist. LEXIS 41376, at *12-21; *M/V Admiralengracht*, 1999 U.S. Dist. LEXIS
6152, at *5-6.

[30]     (Dkt. No. 25, Part 1, ¶¶ 10.a., 11 [Affid. of Milman]; Dkt. No. 25, Part 3 [Ex. B to
Affid. of Milman]; Dkt. No. 25, Part 5 [Ex. D to Affid. of Milman]; Dkt. No. 20, Part 1, at 1
[Affid. of Chumley]; *see also* Dkt. No. 29, at 1 [Defs.' Reply in Support of Cross-Motion,
acknowledging that Rescuecom's Franchise Director, Robert Jamison, sent Defendant Chumley a

(2) the Agreement was only 57 pages long, and the jurisdiction-selection clause was stated in all capital letters and in bold font;[31] and (3) in addition to signing the entire Agreement, Defendant Chumley specifically initialed a part of the Agreement that expressly stated that, before signing the Agreement, he had "read and understood" the Agreement.[32]  Moreover, it is difficult for me to imagine that Defendant Chumley did not actually read the clause in question, particularly since, before he signed the Franchise Agreement on or about January 24, 2006, he (a) attempted to renegotiate various (unidentified) terms of the Agreement with Plaintiff's management,[33] and (b) hired an accounting firm to prepare a business valuation to ensure that a viable business could be operated, as he stated, "under the terms of the offering and information provided by [Plaintiff]" (i.e., the Uniform Franchise Offering Circular), which included a copy of the Franchise Agreement.[34]

In addition, in responding to the inquiry set forth in the second step, I find that the clause in question should be classified as *mandatory* in nature.  As stated earlier, the Agreement

---

Uniform Franchise Offering Circular, which included a copy of the Franchise Agreement, at some point before mid-January of 2006, and that Plaintiff sent Defendant Chumley the Franchise Agreement in mid-January of 2006].)

[31]      (Dkt. No. 25, Part 1, ¶ 17.b. [Affid. of Milman]; Dkt. No. 25, Part 2, at 2 [Affid. of Milman, attaching, *inter alia*, Franchise Agreement's Table of Contents]; Dkt. No. 25, Part 2, at 4 [Affid. of Milman, attaching, *inter alia*, page 55 of the Franchise Agreement, which, at Paragraph B, contained the referenced jurisdiction-selection clause].)

[32]      (Dkt. No. 25, Part 1, ¶ 18 [Affid. of Milman]; Dkt. No. 25, Part 6, ¶¶ A., B. [Affid. of Milman, attaching Franchise Agreement's "Acknowledgment" page, expressly stating, *inter alia*, that Defendant Chumley had received the Agreement at least five business days before signing it, and that he had "read and understood" the Agreement].)

[33]      (Dkt. No. 20, Part 1, at 1 [Affid. of Chumley].)

[34]      (Dkt. No. 29, at 1 [Defs.' Reply].)

provided, *inter alia*, that the "Franchisee acknowledges that this Agreement is entered into in

Onondaga County, New York, and that the exclusive jurisdiction . . . for any action sought to be

brought by either party, except those claims required to be submitted to arbitration, . . . [is] the

appropriate state or federal court sitting in Onondaga County, New York . . . ." (Dkt. No. 20,

Part 2, ¶ XXX.B. [Ex. 1 of Affid. of Chumley, attaching portion of Franchise Agreement],

*accord*, Dkt. No. 25, Part 2, ¶ XXX.B. [Ex. A to Affid. of Milman].)

Moreover, in responding to the inquiry set forth in the third step, I find that the claims and

parties involved in this action are subject to the clause in question.  Granted, the clause does not

apply to "claims required to be submitted to arbitration," (*id*.), and such claims *generally* include

"[a]ny monetary claim arising out of or relating to [the] Agreement, or any breach thereof . . ."

(Dkt. No. 20, Part 2, ¶ XXX.I. [Ex. 1 of Affid. of Chumley, attaching portion of Franchise

Agreement]).  However, "claims required to be submitted to arbitration" do not include claims

arising out of "any disputes relating to confidential information or the [Trademarks] . . . ." (*Id*.)

Furthermore, the Agreement's arbitration clause expressly provides that "[n]othing contained

herein shall . . . be construed to limit or to preclude Franchisor from bringing any action in any

court of competent jurisdiction for injunctive or other provisional relief as Franchisor deems to

be necessary or appropriate to compel Franchisee to comply with its obligations hereunder or to

protect its [Trademarks] or other property rights of Franchisor."  (*Id*.)  Here, Plaintiff's claims

include two claims for injunctive relief, namely, (1) a claim for an injunction ordering Defendant

Chumley "to refrain from soliciting or doing business with or for any customer Defendant

performed services for or sold product to while he operated the Franchised Businesses, and to

further refrain from diverting or attempting to divert businesses or customers of the Franchised

Business to any competitor," and (2) a claim for an injunction ordering Defendant Chumley to "cease identifying himself as a RESCUECOM franchise or former franchisee, and to cancel any fictitious name filing or d/b/a filing allowing them to operate under the name 'RESCUECOM.'" (Dkt. No. 1, Part 2, ¶¶ 29-33 [Plf.'s Compl.].)

Finally, in responding to the inquiry set forth in the fourth step, I find that Defendants have not rebutted the applicable presumption of enforceability by making a sufficiently strong showing that enforcement would be *unreasonable*. A consent-to-jurisdiction clause is considered "unreasonable" only if (1) its incorporation into the agreement was the result of fraud or overreaching, (2) the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum, (3) the fundamental unfairness of the chosen law may deprive the complaining party of a fair result in court, or (4) the clause contravenes a strong public policy of the forum state.[35]

Here, although Defendant Chumley, in his affidavit, asserts that Plaintiff perpetrated a "fraud" against him, he does so in a vague and conclusory fashion, and does not assert sufficient facts to establish that Plaintiff knowingly made any false representation to him with regard to the clause in question (or that, even if such a misrepresentation was knowingly made, it was relied upon by Plaintiff). (Dkt. No. 20, Part 1, at 2 [Affid. of Chumley].)[36] Nor does he adduce

---

[35]      *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) [citations omitted], *accord*, *Audio Active Ltd.*, 494 F.3d at 392. (*See also* Dkt. No. 19, at 13 & n.28 [Defs.' Mem. of Law] [citing cases].)

[36]      *See G&R Moosjestic Treats Inc. v. Maggiemoo's Int'l, LLC*, 03-CV-10027, 2004 WL 1110423, at *4 (S.D.N.Y. May 19, 2004) ("Plaintiffs have made conclusory allegations of fraud and coercision. Such bare bones allegations are insufficient to invalidate the forum selection clause.") [citations omitted].

sufficient evidence to establish any "overreaching" on the part of Plaintiff.  The mere fact that the

terms of the Franchise Agreement were more favorable to Plaintiff than they were to Defendants,

and that they were part of a form contract, does not make Plaintiff liable of "overreaching."[37]  I

note that, during the relevant time period, Defendant Chumley was a computer technician with

enough business acumen to do the following, before signing the Franchise Agreement: (1)

question Plaintiff about a number of the terms and clauses contained in the Franchise Agreement;

(2) hire an accounting firm to perform a business valuation; (3) prepare a business plan; (4) form

a corporation; and (5) borrow money to invest in a franchise.[38]  I note also that more than three

months passed between the date on which Defendant Chumley first received the Franchise

Agreement (on or about December 23, 2005) and the date on which the Agreement's execution

was completed (on or about March 30, 2006).

     Moreover, while Defendants will, no doubt, be subjected to *some* inconvenience and/or

additional financial expense as a result of having to litigate in this District rather than in the

United States District Court for the Western District of Louisiana, I find that such inconvenience

---

[37]  (*See* Dkt. No. 26, at 9-10 [Plf.'s Opp. Mem. of Law, collecting cases].)  *See also Mathews v. Rescuecom Corp.*, 05-CV-4834, 2006 WL 414096, at *6 (D.N.J. Feb. 16, 2006) ("The mere fact that an agreement containing a forum selection clause is a contract of adhesion does not render the clause unenforceable.") [citations omitted].  I note that, like the defendant in *Mathews v. Rescuecom Corp.*, Defendant Chumley has not asserted that he specifically tried to negotiate *the clause in question* but was rebuffed.  I note also that, if Defendant Chumley were to offer such an assertion, it would undermine his argument that the clause was hidden from him.

[38]  (Dkt. No. 20, Part 1, at 1 [Affid. of Chumley]; Dkt. No. 29, at 1-2 [Defs.' Reply].) Indeed, he specifically initialed a portion of the Agreement that expressly acknowledged that he had sufficient "skills, experience and education" to afford him the opportunity to derive income from other endeavors (should the Agreement's covenant not to compete be triggered).  (Dkt. No. 25, Part 6, ¶ D. [Affid. of Milman, attaching Franchise Agreement's "Acknowledgment" page].)

and/or additional expense is not so grave as to effectively deprive them of their day in court.[39]

For example, in March of 2006, Defendant Chumley had the resources to travel to Syracuse,

N.Y., to witness Plaintiff execute the Franchise Agreement, and to receive training.  Furthermore,

from June of 2007 to the present, Defendants have been able, through counsel, to effectively

litigate this action (which has, all the while, been pending in this District).  And, as Plaintiff

argues, Defendants have not specifically articulated what physical evidence and witnesses are

located in Louisiana, so as to make litigation in the Northern District of New York

inconvenient.[40]

Furthermore, I can find nothing at all that is "fundamentally unfair" about the law of the

chosen forum, much less a fundamental unfairness that is so egregious as to deprive Defendants

of a fair result in court.  I do not even read Defendants' motion papers as advancing such an

argument.  While they argue that the forum-selection clause would be "illegal" under Louisiana

law (*see* Dkt. No. 19, at 12), that is not the issue.  The issue is whether the clauses that

Defendants are alleged to have breached would be unenforceable under Louisiana law.  They

make no such argument, as far as I can tell.  Furthermore, to show unfairness, under the

circumstances, Defendants would have to show also that the clauses that they are alleged to have

breached would be enforceable under New York law.

Finally, Defendants have not shown that the clause contravenes a strong public policy of

the forum state.  While Defendants argue that the forum-selection clause contravenes the public

---

[39]       *See Mathews v. Rescuecom Corp.*, 2006 WL 414096, at *6 ("Mere inconvenience
or additional expense is not the test for unreasonableness.") [internal quotation marks and
citations omitted].)  (*See also* Dkt. No. 26, at 11-12 [Plf.'s Opp. Mem. of Law, collecting cases].)

[40]       (Dkt. No. 26, at 10-11 [Plf.'s Opp. Mem. of Law].)

policy of Louisiana (*see* Dkt. No. 19, at 12 [Defs.' Mem. of Law]), again, I do not understand

that to be the proper legal issue.  Rather, the proper legal issue appears to be whether the clause

contravenes a strong public policy of the *forum* state, i.e., New York.  Here, the Second Circuit

has a "strong policy" in favor of giving effect to such clauses.  *G&R Moosjestic Treats Inc. v.*

*Maggiemoo's Int'l, LLC*, 03-CV-10027, 2004 WL 1110423, at *3 (S.D.N.Y. May 19, 2004)

[citations omitted]; *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1278

(S.D.N.Y. 1992); *see also Bense v. Interstate Battery Sys. of Am.,* 683 F.2d 718, 721-22 (2d Cir.

1982).  Moreover, the forum state generally has an interest in adjudicating claims brought by its

residents.  *See Great N. Ins. Co. v. Constab Polymer-Chemie*, 01-CV-0882, 2007 WL 2891981,

at *10 (N.D.N.Y. Sept. 28, 2007) (Mordue, C.J.).

 As a result, I reach the same conclusion (i.e., that the Court has personal jurisdiction over

Defendants) on the alternative ground that Defendants consented to that personal jurisdiction by

virtue of the consent-to-jurisdiction clause in the Franchise Agreement.

## 2. Request for Order Transferring Venue

 Defendants argue that, in the alternative, the Court should grant their motion to change

venue to the United States District Court for the Western District of Louisiana under 28 U.S.C. §

1404, because (1) Defendants reside there, (2) the contract was entered into there, (3) all the

witnesses in this action are located there, (4) the evidence is located there, and (5) all the events,

transactions, and acts occurred there.  (Dkt. No. 19, at 19-20 [Defs.' Mem. of Law].)

 Plaintiff responds that Defendants' motion to change venue should be denied because the

legal standard governing a motion to transfer venue is essentially the same legal standard

governing whether to enforce a forum-selection clause; and, under that legal standard (applied

above in Part II.B.1.b. of this Report-Recommendation), venue is appropriate in the Northern

District of New York.  (Dkt. No. 26, at 18-19 [Plf.'s Opp. Mem. of Law, at pages "13" and

"14"].)

After carefully considering the matter, I agree with Plaintiff, although for slightly

different reasons than those it offers.

A district court may transfer any civil action to any other district or division where it

might have been brought "[f]or the convenience of the parties and witnesses," [and] in the

interest of justice."  28 U.S.C. § 1404(a).  "The purpose of section 1404(a) 'is to prevent the

'waste of time, energy and money' and 'to protect litigants, witnesses and the public against

unnecessary inconvenience and expense.'"  *Flaherty v. All Hampton Limousine, Inc.*, 01-CV-

9939, 2002 U.S. Dist. LEXIS 15171, at *3 (S.D.N.Y. Aug. 16, 2002) [citations omitted].

"Motions to transfer venue are governed by a two-part test: (1) whether the action to be

transferred 'might have been brought' in the transferee venue; and (2) whether the balance of

convenience and justice favors transfer."  *Flaherty*, 2002 U.S. Dist. LEXIS 15171 at *3-4

[citations omitted].

Here, the action could have been brought in the Western District of Louisiana.  The

relevant federal venue statute provides, in pertinent part:

> (a) A civil action wherein jurisdiction is founded only on diversity
> of citizenship may, except as otherwise provided by law, be
> brought only in (1) *a judicial district where any defendant resides,*
> *if all defendants reside in the same State*, (2) a judicial district in
> which a substantial part of the events or omissions giving rise to
> the claim occurred, or a substantial part of property that is the
> subject of the action is situated, or (3) a judicial district in which
> any defendant is subject to personal jurisdiction at the time the
> action is commenced, if there is no district in which the action may
> otherwise be brought.

28 U.S.C. § 1391 [emphasis added].

As a result, the decision of whether to transfer depends on the balance of convenience and justice.  "In making this determination, a judge has 'considerable discretion . . . according to an individualized, case-by-case consideration of convenience and fairness."  *Flaherty*, 2002 U.S. Dist. LEXIS 15171, at *4 [citations omitted].  A non-exclusive list of factors to consider includes the following:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to those sources of proof; (4) the situs of the operative events in issue; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) judicial efficiency and the interests of justice.

*Id*. [citations omitted].  "No individual factor is determinative and a court has discretion to weigh each factor to reach a fair result."  *Id*. [citations omitted].

Moreover, "[t]he presence of a [valid and enforceable] forum-selection clause . . . [in a case] will be a *significant factor* that figures centrally in the district court's calculus [when deciding a motion to transfer venue under 28 U.S.C. § 1404(a)]."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) [emphasis added].  This is because, as the Supreme Court has explained, "[t]he flexible and individualized analysis Congress prescribed in § 1404(a) . . . encompasses consideration of the parties' private expression of their venue preferences."  *Stewart Org., Inc.*, 487 U.S. at 29-30.  The practical effect of the presence of a valid forum-selection clause is to "put[] a greater burden on the party seeking to transfer the case."  *Elite Parfums, Ltd., v. Rivera*, 872 F. Supp. 1269, 1272 (S.D.N.Y. 1995); *see also A.I. Int'l Corp. Holdings, Inc. v. Surgicare, Inc.*, 03-CV-2481, 2003 WL 22705128, at *3-4 (S.D.N.Y. Nov. 17,

2003) (requiring more than "[m]ere inconvenience and expenses of traveling" where forum-selection clause is present on motion to transfer venue; requiring presence of "exceptional circumstances").

Here, I reject, as factually unsubstantiated, Defendants' factual assertion that Louisiana was "where the subject contract was entered [into]."  (Dkt. No. 19, at 20 [Defs.' Mem. of Law].) It appears rather clear from the record that the Franchise Agreement was prepared in New York, sent to Defendants in Louisiana by Plaintiff in New York, signed by Defendants in Louisiana, signed by Plaintiff in New York, and delivered to Defendants (in its completely executed form) in New York.  I will spare the reader an in-depth conflicts-of-laws analysis.  *See* Restatement (Second) of Conflicts of Laws § 188 cmt. e (2007) ("As used in the Restatement of this Subject, the place of contracting is the place where occurred the last act necessary . . . to give the contract binding effect . . . .").  Suffice it to say, I cannot imagine how one might, without significant explanation, conclude with any certainty from these facts that Louisiana was *the* place that the Franchise Agreement was "entered [into]."

Moreover, I reject, as factually unsubstantiated, Defendants' factual assertion that Louisiana is "where *all* witnesses [in this action] are located," and "where all events[,] transactions and acts occurred."  (Dkt. No. 19, at 20 [Defs.' Mem. of Law].)  As an initial matter, Defendants fail to specify the identity of *any* witness (other than Defendant Chumley) who is located in Louisiana (nor do Defendants even identify how many such witnesses allegedly exist).[41]  Moreover, even I were to find that some of the witnesses are located in Louisiana, I

---

[41]     *See Medicap Pharm., Inc. v. Faidley*, 416 F. Supp.2d 678, 687 (S.D. Iowa 2006) (denying motion to transfer venue in action for breach of franchise agreement, in part because franchisee-defendant did not identify the potential witnesses who may have been inconvenienced

would have extreme difficulty finding, based on the current record, that *all* of the witnesses in this action are located in Louisiana (and that *all* of the events at issue occurred in Louisiana).  In particular, I note that New York is (1) where Plaintiff's headquarters is located (and presumably any management with whom Defendant Chumley communicated by telephone during the course of Defendants' performance under the Franchise Agreement), (2) where Defendant Chumley received his week-long training from Plaintiff, (3) where Plaintiff received money, and from where it issued automated bills, with regard to certain accounts, and (4) from where Plaintiff allegedly sent Defendant Chumley both a notice of default and a notice of termination with regard to the parties' Franchise Agreement (*see* Dkt. No. 1, Part 2, ¶¶ 12, 14 [Plf.'s Compl.]).

Moreover, several other factors weigh distinctly *against* transfer.  For example, the Northern District of New York is more familiar with the substantive law governing many or perhaps all of Plaintiff's breach-of-contract claims than is the Western District of Louisiana. That law is New York law, according to the choice-of-law clause in the parties' Franchise Agreement.[42]  Moreover, at least some weight should be accorded to Plaintiff's choice of forum. That forum is Onondaga County, New York.

Finally, and most significantly, Defendants have not adduced evidence demonstrating special circumstances explaining why the Court should disregard the parties' private expression of their venue preferences in the forum-selection clause of the Franchise Agreement.  I note that

by the chosen forum), *accord*, *Hardee's Food Sys., Inc. v. Beardmore*, 169 F.R.D. 311, 316 (E.D.N.C. 1996).

[42]      (*See* Dkt. No. 20, Part 2, ¶ XXX.A. [Ex. 1 of Affid. of Chumley, attaching Franchise Agreement, providing, *inter alia*, "This Agreement and the rights of the parties hereunder . . . shall be interpreted and construed under the laws in New York, which laws shall prevail in the event of any conflict of law, except to the extent governed by federal law . . . ."].)

the mere inconvenience and expense of traveling, incurred by Defendants and various witnesses, are not "adequate reasons to disturb the parties' contractual choice of forum."[43]  The reason that this is so is that "[e]ven if the traveling were a serious inconvenience, it was contemplated by the parties when entering into the contract."[44]

For these reasons, I recommend that the Court deny Defendants' motion to transfer venue to the United States District Court for the Western District of Louisiana, under 28 U.S.C. § 1404(a).

### 3.    Request for Order Compelling Arbitration

Defendants argue that the Court should compel Plaintiff to participate in arbitration because the Franchise Agreement contains an arbitration clause that, as Defendants put it, "permits either party to demand arbitration with any arbitrator who uses the rules of the American Arbitration Association."  (Dkt. No. 19, at 20-21 [Defs.' Mem. of Law].)

Defendants do not appear to be entirely accurate in their summary of the arbitration clause.  Rather, that clause appears to contain several exceptions.  For example, as described above in Part II.B.1.b. of this Report-Recommendation, one such exception appears to provide that "claims required to be submitted to arbitration" do not include claims arising out of "any

---

[43]        *A.I. Int'l Corp. Holdings, Inc.*, 2003 WL 22705128, at *4; *Days Inns of Am., Inc. v. Mem. Hosp. Corp.*, 97-CV-2438, 1997 WL 782049, at *1 (S.D.N.Y. Dec. 19, 1997); *Huntington Eng'g & Envtl.. Inc. v. Platinum Software Corp.*, 882 F. Supp. 54, 58 (W.D.N.Y. 1995); *Elite Parfurms, Ltd.*, 872 F. Supp. at 1272; *Weiss*, 801 F. Supp. at 1278 [citations omitted]; *see also Am. Fin. Servs. Group v. Technimar Indus., Inc.*, 97-CV-9067, 1998 WL 684589, at *4 (S.D.N.Y. Sept. 30, 1998) [citations omitted]; *Am. Mktg. Enters., Inc. v. Sun Apparel Inc.*, 96-CV-1994, 1997 WL 47813, at *5 (S.D.N.Y. Feb. 6, 1997) [citations omitted].

[44]        *Elite Parfurms, Ltd.*, 872 F. Supp. at 1272; *First Interstate Leasing Serv. v. Sagge*, 697 F. Supp. 744, 747 (S.D.N.Y. 1988) [citations omitted]; *see also Caribbean Wholesales and Serv. Corp. v. US JVC Corp.*, 93-CV-8197, 1996 WL 140251, at *4 (S.D.N.Y. Mar. 27, 1996).

disputes relating to confidential information or the [Trademarks] . . . ." (Dkt. No. 20, Part 2, ¶ XXXI [Arbitration Clause].)  Furthermore, the clause does not appear to "limit or to preclude Franchisor from bringing any action in any court of competent jurisdiction for injunctive or other provisional relief as Franchisor deems to be necessary or appropriate to compel Franchisee to comply with its obligations hereunder or to protect its [Trademarks] or other property rights of Franchisor." (*Id*.)  Here, Plaintiff's claims include two claims for injunctive relief, which are, again, described above in Part II.B.1.b. of this Report-Recommendation.

Morever, Defendants have neither stated, nor applied, the particular legal standard that governs their motion, as required by Rule 7(b)(1) of the Federal Rules of Civil Procedure and Local Rule 7.1(a)(1) of the Local Rules of Practice for this Court. *See*, *e.g.*, *Chau v. Wes Carver Med. Assoc., P.C.*, 06-CV-0526, 2006 U.S. Dist. LEXIS 92297, at *4-5 (E.D.N.Y. Dec. 21, 2006) (discussing legal standard governing motions to compel arbitration brought under the Federal Arbitration Act), *accord*, *Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*, 03-CV-1162, 2003 U.S. Dist. LEXIS 26764, at *7-11 (S.D.N.Y. Aug. 28, 2003).  If Defendants had stated and applied the appropriate legal standard, they might have briefed the Court on which of the claims asserted in Plaintiff's Complaint are subject to arbitration (and which, if any, are not subject to arbitration). They might also have reconciled the *apparent* inconsistency in their implicit argument, on the one hand, that the arbitration clause of the parties' Franchise Agreement is valid and enforceable, and their explicit argument, on the other hand, that the consent-to-jurisdiction and forum-selection clauses of the Agreement are *not* valid and enforceable.  I note that the Agreement's arbitration clause appears to be similar (and, indeed, *less* conspicuous) in nature than the Agreement's consent-to-jurisdiction and forum-selection clauses. (*Compare* Dkt. No. 20, Part 2,

36

¶ XXXI [Arbitration Clause, in small letters and regular font] *with* Dkt. No. 20, Part 2, ¶ XXX.A.
[Choice-of-Law Clause, in all capital letters and bold font] *and* Dkt. No. 20, Part 2, XXX.B.
[Consent-to-Jurisdiction and Forum-Selection Clause, in all capital letters and bold font].)

As a result, I find that Defendants have not shown cause in favor of granting their request
for an Order compelling arbitration.  However, I believe that, under the circumstances, they
should be permitted to renew that motion, if they so choose.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for remand (Dkt. No. 13; *see also* Docket
Minute Entry for 7/18/07) be **DENIED**; and it is further

**RECOMMENDED** that Defendants' cross-motion to dismiss for lack of personal
jurisdiction, or, in the alternative, to transfer this action to the Western District of Louisiana (Dkt.
Nos. 18-19) be **DENIED**; and it is further

**RECOMMENDED** that Defendants' alternative cross-motion to compel arbitration
pursuant to the parties' Franchise Agreement (Dkt. Nos. 18-19) be **DENIED without prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file
written objections to the foregoing report.  Such objections shall be filed with the Clerk of the
Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL
PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)
(citing *Small v. Sec'y of Health and Human Servs*., 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. §
636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 2, 2007
          Syracuse, New York

George H. Lowe
United States Magistrate Judge