UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RESCUECOM CORP.,

       Plaintiff/Counter-Defendant,

v.                                                                                                   5:07-CV-0690
                                                                                                     (GTS/GHL)
JONATHAN CHUMLEY; and
OSI CONSULTING, LLC,

       Defendants/Counter-Claimants,
_____

APPEARANCES:                                                                         OF COUNSEL:

LYNCH & ROBBINS                                                              EDMUND J. GEGAN, ESQ.
  Counsel for Plaintiff
2639 Dr. Martin Luther King Street N
St. Petersburg, FL 33704

JONATHAN CHUMLEY
  Defendant, *Pro Se*
239 Hanging Moss Trail
Shreveport, LA 71106

OSI CONSULTING, LLC
  Defendant
9857 High Point Drive
Shreveport, LA 71106

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Currently before the Court in this breach-of-contract action, filed by Rescuecom Corporation ("Plaintiff") against Jonathan Chumley ("Defendant Chumley") and OSI Consulting, LLC ("Defendant OSI"), is Plaintiff's motion for summary judgment with regard to damages on its breach-of-contract claim and its request for attorney's fees. (Dkt. Nos. 135, 136, 138.) For the reasons set forth below, Plaintiff is awarded damages in the amount of $20,297.78 on its breach-of-contract claim, and attorney's fees in the amount of $5,074.45.

I.  **RELEVANT BACKGROUND**

On or about June 8, 2007, Plaintiff filed this breach-of-contract action against Defendants in Supreme Court for Onondaga County. (Dkt. No. 1, Attach. 2 [Plf.'s Compl.].) On or about July 3, 2007, Defendants removed this action to this Court. (Dkt. No. 1, Attach. 1 [Defs.' Notice of Removal].)

On August 3, 2009, Plaintiff filed a motion for summary judgment. (Dkt. No. 70.) In that motion, Plaintiff argued that it is entitled to summary judgment on its breach-of-contract claim, and stipulated damages in the amount of $54,975.08. (*Id.*)

On March 28, 2011, the Court issued a Decision and Order ("March Order") that, among other things, granted in part, denied in part, and reserved decision in part on, Plaintiff's motion for summary judgment. (Dkt. No. 134.) More specifically, the Court granted Plaintiff's motion for summary judgment on the issue of liability, denied Plaintiff's motion for summary judgment on the issue of the enforceability of the stipulated damages provision, and reserved decision on Plaintiff's motion for summary judgment on the issue of the total amount of damages owed (because Plaintiff's motion did not sufficiently request, or establish, such an amount). (*Id.*)

It bears noting that, with regard to the issue of stipulated damages, the Court made the following three findings: (1) the dollar amount that Plaintiff sought to recover as stipulated damages, i.e., $54,975.00, did not appear to bear a reasonable relationship to the pecuniary harm that Plaintiff most likely suffered as a result of Defendants' breach because it appeared that Plaintiff "was, and is, able to service at least some of the same clients that Defendants previously serviced, in the aftermath of Defendants' termination";[1] (2) the parties appeared to have

---

[1] The Court based this finding on two facts. First, it appeared from the record evidence that at least one of the customers with whom Defendants worked as a franchisee was a national client (i.e., a client serviced by other of Plaintiff's franchisees). (Dkt. No. 134, at 22.) Second, the harm flowing from Defendants' having billed (and received payment for) services they failed to render was merely Plaintiff's having to perform services (which Plaintiff appears entirely able to perform) worth approximately $2,665.00 without being paid. (*Id.* at 22-23.)

possessed unequal bargaining power at the time the Franchise Agreement was executed;[2] and (3) the stipulated damages provision was not symmetrical. (*Id*. at 22-24.) In addition, with regard to the issue of actual damages, the Court made the following two observations: (1) while Plaintiff would be entitled to recover actual damages suffered as a result of the termination of the franchise relationship, the entitlement was conditioned on Plaintiff demonstrating that it mitigated its damages; and (2) "actual damages for the entire length of the Franchise Agreement may be unreasonable." (*Id*.)

As a result, the Court ordered Plaintiff to file a supplemental memorandum of law and any additional affidavits and exhibits necessary detailing its damages on its breach-of-contract claim on or before April 28, 2011. (*Id*.) The Court further ordered Defendant Chumley to file a response to Plaintiff's supplemental submissions on or before May 28, 2011. (*Id*.)

On April 28, 2011, Plaintiff filed a supplemental memorandum of law in support of its motion for damages, as well as two supporting affidavits, each containing attached exhibits. (Dkt. Nos. 135, 136, 138.) Defendant did not file a response to Plaintiff's supplemental submissions. (*See generally* Docket Sheet.)

## II.     ANALYSIS

### A.     Damages

In support of its request for damages, Plaintiff has filed two affidavits, each with attached exhibits, and a memorandum of law. (Dkt. Nos. 135, 136, 138.) Plaintiff's request for a specific

---

[2]  The Court based this finding on three facts. First, Defendant Chumley was not represented by counsel either during discussions leading up to the execution of the Franchise Agreement, or during the execution itself. (Dkt. No. 134, at 23.) Second, the record evidence established that the Franchise Agreement was non-negotiable. (*Id*.) Third, while Defendant Chumley was an educated individual with some industry experience, he was not a sophisticated business person in any ordinary sense of the term. (*Id*. at 23-24.)

damage amount is not contained in its memorandum of law, which discusses only the issue of mitigation of damages. (Dkt. No. 138.) Rather, Plaintiff's request for a specific damage amount is contained in the affidavit of Plaintiff's CEO, David Milman. (Dkt. No. 136.) More specifically, in that affidavit, Mr. Milman requests (1) $5,393.84 for unpaid amounts owed at the time of termination, (2) $2,665.00 for prepayments paid to Defendant Chumley by customers for whom he never performed services (and to whom Plaintiff is now liable), and (3) $64,803.50 for lost future royalty payments. (Dkt. No. 136.)

Before the Court analyzes the record evidence offered to support these three types of damages, the Court must make two observations regarding Mr. Milman's affidavit. First, portions of the affidavit are inconsistent with record evidence previously submitted by Plaintiff. For example, the record evidence previously submitted by Plaintiff demonstrated that the average monthly royalty fee payment to be applied in calculating Plaintiff's damages for lost royalties was $1,099.50. (*See* Dkt. No. 134 [citing record evidence establishing this amount].) However, in his affidavit, Mr. Milman states that the monthly royalty fee amount that the Court should apply is $1,319.42. (Dkt. No. 136.)[3]

Second, Mr. Milman's affidavit contains improper legal argument, in violation of Local Rule 7.1(a)(2). For example, Mr. Milman argues that the Court should find the "absolute minimum" amount of Plaintiff's lost royalties to be $1,319.42 because (1) this is the five month

---

[3] This inconsistency is exacerbated by the fact that Mr. Milman's affidavit arguably fails to comply with the certification requirements of 28 U.S.C. § 1746 in that it is does not declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. (*See generally* Dkt. No. 136, at 1 [referencing only "the laws of the State of New York," and failing to expressly declare that the foregoing statements are "true and correct"].) *See also Tackman v. Goord*, 99-CV-0438, 2005 WL 2347111, at *26-27 (W.D.N.Y. Sept. 26, 2005). The Court notes that the notary public certified only that Mr. Milman was the individual who signed the affidavit, not that Mr. Milman had sworn to the truth and correctness of the affidavit. (*Id*. at 10.)

average royalty payment that Plaintiff received when Defendant Chumley was a franchisee, and (2) "new businesses [such as Defendants' franchise in 2006] tend to earn less revenue in their early months and even years of operation, and . . . [t]herefore, it is likely that [Defendant] Chumley's revenues would have increased over time, resulting in increased royalty payments to Rescuecom." (Dkt. No. 136 at ¶¶ 3-4.)

Based on the foregoing, the Court declines to consider the portions of this "affidavit" that (1) are inconsistent with the previously submitted record evidence, or (2) contain legal argument.

### 1. Unpaid Amounts Owed at the Time of Termination

Turning now to the first type of damages requested by Plaintiff (i.e., unpaid amounts owed at the time of termination), the Court stated in its March Order that "Plaintiff ha[d] adduced admissible record evidence establishing damages of $5,393.84" for unpaid amounts owed at the time of termination. (Dkt. No. 134, at 25, n.21.) The Court nonetheless declined to award Plaintiff damages in this amount because Plaintiff's motion did not sufficiently request, and establish, a total damages amount. (*Id*.) In its supplemental submissions, Plaintiff has requested, through Mr. Milman's affidavit, damages in this amount. (Dkt. No. 136.) Furthermore, it has supported that request with evidence. (*See generally* Dkt. No. 136.) Finally, Defendant has failed to oppose that request. (*See generally* Docket Sheet.)

Because Defendant has failed to oppose Plaintiff's request, Plaintiff's burden with regard to its request is lightened such that, in order to succeed, it need only show the facial merit of its request, which has appropriately been characterized as a "modest" burden.[4] For the reasons

---

[4] *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1

stated by Plaintiff in its supplemental submissions, the Court finds that Plaintiff has met this lightened burden. (*See generally* Dkt. No. 136.) In any event, the Court finds that Plaintiff's request would survive even the heightened scrutiny appropriate on a contested motion.

As a result, the Court finds that Plaintiff is entitled to $5,393.84 for unpaid amounts owed at the time of termination.

### 2. Prepayments Paid to Defendant Chumley by Customers

Turning to the second type of damages requested by Plaintiff (i.e., prepayments paid to Defendant Chumley by customers for whom he never performed services, and to whom Plaintiff is now liable), the Court stated in the March Order that "Plaintiff ha[d] adduced admissible record evidence establishing . . . damages of . . . . $2,665.00 for 'payments [that Defendant Chumley has taken] from [Plaintiff's] customers for prepaid services.'" (Dkt. No. 134, at 25, n.21.) The Court nonetheless declined to award Plaintiff damages in this amount because Plaintiff's motion did not sufficiently request, and establish, a total damages amount. (*Id*.) In its supplemental submissions, Plaintiff has requested, through Mr. Milman's affidavit, damages in this amount. (Dkt. No. 136.) Furthermore, it has supported that request with evidence. (*See generally* Dkt. No. 136.) Finally, Defendant has failed to oppose that request. (*See generally* Docket Sheet.)

---

(N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (citing cases that stand for the proposition that, where plaintiffs do not respond to defendants' argument made in their summary judgment motion, plaintiffs are deemed to have consented to defendants' argument, and thus defendants must only satisfy their "modest threshold burden" of demonstrating entitlement to the relief requested in their motion for summary judgment); *accord, Cossey v. David,* 04-CV-1501, 2007 WL 3171819, at *4 & nn. 21, 22 (N.D.N.Y. Oct. 29, 2007) (Lowe, M.J. adopted by Scullin, J.) (collecting cases); *Niles v. Nelson*, 72 F. Supp.2d 13, 22 (N.D.N.Y. 1999) (McAvoy, J.) (holding that, when a party does not respond to a portion of the opposing party's motion, that party indicates that it consents to the granting of summary judgment with respect to that portion of the motion or has abandoned its claim); *cf. Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n.108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

As stated above in Part II.A.1. of this Decision and Order, because Defendant has failed to oppose Plaintiff's request, Plaintiff's burden with regard to its request is lightened. For the reasons stated by Plaintiff in its supplemental submissions, the Court finds that Plaintiff has met this lightened burden. (*See generally* Dkt. No. 136.) In any event, the Court finds that Plaintiff's request would survive even the heightened scrutiny appropriate on a contested motion.

As a result, the Court finds that Plaintiff is entitled to $2,665.00 for prepayments paid to Defendant Chumley by customers for whom he never performed services.

### 3.     Lost Future Royalty Payments

Turning now to the third type of damages requested by Plaintiff (i.e., $64,803.50 for lost future royalty payments), the Court noted in its March Order that Plaintiff had sought $54,975.00 in stipulated damages based on record evidence establishing that royalty fees paid to Plaintiff over the final six months of Defendants' franchise were $6,597.01, which equates to a monthly royalty fee payment of $1,099.50. (Dkt. No. 134, at 17, n.6; Dkt. No. 70, Attach. 15, at 4.) Based on that analysis, it would appear that, at best, Plaintiff is entitled to a monthly royalty fee payment of $1,099.50 for 50 months.

Moreover, in the March Order, the Court noted that, prior to terminating Defendants' franchise, Plaintiff was made aware that Defendants were owed approximately $11,000 from Amptek for services rendered. (Dkt. No. 134, at 23, n.19; Dkt. No. 70, Attach. 20, at 4-5, 11-12 [testifying that Amptek owed Defendants "eleven grand," of which Milman was made aware].) In addition, while the record established that Defendants were never paid this money, it appeared that, in calculating its stipulated damages, Plaintiff factored in royalty fees owed on this $11,000 amount. (Dkt. No. 134, at 23, n.19; Dkt. No. 70, Attach. 15, at 4 [reflecting product sales for the month of May 2006 as $10,695.60]; Dkt. No. 70, Attach. 20, at 5 [testifying that Amptek was

Defendants' first customer, the services for Amptek were performed in April, and that Defendant Chumley did not pick up other customers until late-May or early June].) The Court therefore stated that, "[t]o the extent the calculated stipulated damages of $54,975.00 factor[ed] in royalties paid on this $11,000, the requested amount [wa]s also excessive." (Dkt. No. 134, at 23, n.19.)

After carefully reviewing all of the available record evidence (including the affidavit of David Milman, the "affidavit" of Plaintiff's former employee Sabreen Kabeer,[5] and the record evidence submitted with those affidavits), the Court now finds that the monthly royalty payment amount requested by Plaintiff in its supplemental submission in fact considers $10,747.60 from Amptek, which Defendants were never paid.

After removing this $10,747.60 amount from Plaintiff's monthly royalty fee calculation for products sold, the result is a negative total over the six-month period. (*See*, *e.g.*, Dkt. No. 135, Attach. 3 [demonstrating the total product sales for the month of May 2006 to be $10,747.60, with the gross profit product for the month of May 2006 to be $3,419.09, and the total overall gross profit product for the months between May 2006 and October 2006 to be $3,248.92].) As a result, the Court finds that the total royalties actually owed to Plaintiff over the six-month period between May 2006 and October 2006 (i.e., the final six months of the franchise relationship between Plaintiff and Defendants) was $5,362.42. (Dkt. No. 135, Attach. 3.) This amount represents a monthly royalty fee payment of $893.74.[6]

---

[5] This "affidavit" contains the same defects as described above in note 3 of this Decision and Order. (Dkt. No. 135.)

[6] More specifically, the Court calculates this amount the following way: $5,362.42 divided by 6 equals $893.74.

The Court would add only that Mr. Milman states in his affidavit that, because of billing disputes with Amptek (largely, if not entirely, caused by Plaintiff), Plaintiff stopped servicing Amptek, the national client who failed to pay Defendant Chumley approximately $11,000 for services rendered, "after 2006." (Dkt. No. 136 at ¶ 22 [referencing Chumley's explanation]; *see generally* Dkt. No. 77 [Chumley Affid.].) As a result, it is unreasonable for Plaintiff to assume that, had Defendant Chumley not breached his agreement with Plaintiff, Amptek would have remained a franchisee after 2006, entitling Plaintiffs to recover from Defendants royalty payments earned from Amptek after 2006.

Having determined the appropriate monthly royalty payment that Plaintiff is actually owed before taking into account monies that Plaintiff recovered through mitigation efforts, the Court must now determine the number of months for which Plaintiff may recover lost royalty payments. As explained in the Court's March Order, making such a determination is based on a reasonableness standard. (Dkt. No. 134, at 24 [citing decision for point of law that it is improper for "actual damages for the entire length of the [Franchise] Agreement [to] be unreasonable"].)

In his affidavit, Mr. Milman states that (1) in 2006, he formed Flawless Computing, which "eventually beg[a]n offering 'remote' computer service to customers," and (2) "after 2007, [Plaintiff] stopped actively selling franchises altogether" (and, as a result, did not make further efforts "to sell a new franchise into the Shreveport, Louisiana area [where Defendants were located]"). (Dkt. No. 136 at ¶¶ 9-12.) Because Plaintiff stopped making efforts to sell a franchise in the territory once belonging to Defendants after 2007, the Court finds that it would be unreasonable for Plaintiff to collect monthly royalty payments from Defendants after 2007. As a result, Plaintiff is entitled to royalty payments for the period from November 2006 through December 2007, or fourteen (14) months.

Finally, Mr. Milman states in his affidavit that, in 2007, Plaintiff received royalty payments from Flawless Computing in the amount of $273.42, which represents Plaintiff's efforts to mitigate damages for that year. (Dkt. No. 136.) As a result, the Court concludes that Plaintiff is entitled to damages for lost royalty payments in the amount of $12,238.94.[7]

Adding together the unpaid amounts owed at the time of termination, the prepayments paid to Defendant Chumley by customers, and the lost future royalty payments, the Court arrives at a total damages amount of $20,297.78.[8]

### B.    Attorney's Fees and Costs

In the March Order, the Court concluded that the provision in the Franchise Agreement providing for a stipulated attorney's fee award of 25% of the damage award was reasonable. Here, as explained above in Part II.A. of this Decision and Order, the total damage award is $20,297.78. As a result, an attorney's fee award of $5,074.45 is appropriate.[9]

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff is awarded $20,297.78 in damages on its breach-of-contract claim against Defendant Chumley and Defendant OSI, who are jointly and severally liable for this amount; and it is further

---

[7]    More specifically, the Court calculates this amount the following way: $893.74 times 14 equals $12,512.36; $12,512.36 minus $273.42 equals $12,238.94.

[8]    More specifically, the Court calculates this amount the following way: $5,393.84 in unpaid amounts plus $2,665.00 in prepayments plus $12,238.94 in lost royalties equals $20,297.78 in total damages.

[9]    More specifically, the Court calculates this amount the following way: $20,297.78 times 0.25 equals $5,074.45 in attorney's fees.

**ORDERED** that Plaintiff is awarded $5,074.45 in attorney's fees against Defendant Chumley and Defendant OSI, who are jointly and severally liable for this amount.  The Clerk of the Court is directed to enter judgment and close this case.

Dated: July 14, 2011
    Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge